**VIRECA CORPORATION v. COLE et al.**

**No. 5117.**

Court of Civil Appeals of Texas. Texarkana.

Feb. 21, 1936.

Rehearing Denied March 5, 1936.

568

A. D. Dyess and Joel W. Cook, both of Houston, for appellant.

Wynne & Wynne and W. A. Wade, all of Longview, for appellees.

HALL, Justice.

Appellant prosecutes this appeal from an order of the district court of Gregg county denying it a temporary injunction against appellees and refusing the appointment of a receiver.

Appellant's amended petition sets out a cause of action in trespass to try title against appellees to fifteen acres of land, being the south portion of the A. Little Park Survey, originally leased by M. T. Cole, owner of the fee, to W. W. Bradley, and thereafter regularly assigned to appellant. On May 27, 1935, M. T. Cole and wife leased to Frank Cole approximately two acres of land described as follows: "Bounded on the West by the East line of a tract of land described in deed from W. B. Walker to W. D. Lacy (date and page of record omitted here) in the E. H. Gresham Survey; Bounded on the South by the North line of the Samuel Brooks Survey; Bounded on the East by West line of the A. Little Park Survey, patented to M. T. Cole. The North corner of tract described herein is common corner with Northeast corner of said tract described in deed from Walker to Lacy and the Northwest corner of said A. Little Park Survey, patented to M. T. Cole. The tract herein described being that portion of the E. H. Gresham Survey lying within the enclosure of lessor."

This two-acre tract is narrow and triangular in shape, with the point of the triangle to the north, resting on the south bank of Sabine river. The lease to this two-acre tract was not filed for record until November 15, 1935. Appellant contends that there is no vacancy between the Walker land on the west and its lease on the east, but that the two tracts join, thereby pinching out the two-acre lease in controversy. Some of the appellees secured from the Railroad Commission, over the protest of appellant, a permit to drill an oil well on the two-acre tract in dispute, and thereafter entered upon same and began the drilling of said well. Appellant alleged that on October 29, 1935, and before the actual drilling operations had begun, it, by letter and telegram, notified certain of appellees, namely Lee and Burnett, that it had filed a suit in trespass to try title for the two-acre strip of land on which they, appellees Lee and Burnett, were preparing to drill an oil well. After the well had been completed, as a producer of oil the appellant sought an injunction against appellees from producing oil therefrom pending the trial of the trespass to try title suit involving the title to said disputed land. It alleged that it had suffered great and irreparable injury by reason of the drilling of said well and the taking of oil therefrom, and would suffer injury in the future, and that it had no adequate or complete remedy at law. Appellants also prayed for a receiver to take charge of the two-acre strip of land in controversy pending the final disposition of the main case. Appellant's amended petition was sworn to.

Appellees answered, denying that appellant owned the leasehold on which their well was drilled, but alleged that same was owned by appellees Lee and Burnett and Frank Cole; that they, Lee and Burnett, were solvent and amply able to respond in damages should judgment be against them upon trial of the case on its merits. They also pleaded not guilty.

After a full hearing, the trial court denied the temporary injunction and receivership, from which order appellant prosecutes its appeal to this court.

Both appellant and appellees hold title to their respective tracts of land from M.

T. Cole, not in the sense of a common source of title, but as common grantor. The contention of appellant is that its lease covers and includes within its field notes the land claimed by appellees, thus making a clear and unmistakable dispute between the parties over the title to the two-acre strip of land on which appellees have drilled a producing oil well. This case, then, though termed one in trespass to try title, is in reality a dispute between the parties as to the true and correct west boundary line of appellant's leasehold.

There is no proof in the record to the effect, nor do the findings of fact filed by the trial court establish, that the appellees entered upon the property in controversy either by force or fraud. It is true that appellant makes the allegation that certain of the appellees forcibly entered upon the property in controversy, but the record wholly fails to establish such fact. So the conclusion is inescapable that the appellees entered upon and took possession of the said two-acre strip of land by virtue of a mineral lease executed by M. T. Cole and wife under which they were holding the same on the date of the hearing for the temporary injunction and a receiver in the lower court. Moreover, the issues of fact as to the ownership of the property in controversy as reflected by the record were hotly contested, so much so that the trial court found that the lease under which appellant holds did not cover or include within its boundaries the land in controversy on which appellees' well is located.

As we view the facts of this case, the granting of a temporary injunction would accomplish the entire object of the suit. This should never be done by an interlocutory order, for, as said in 1 Beach on Injunction, p. 128: "If the effect of the granting of a temporary injunction does more than preserve the status of the property as it had heretofore existed and accomplishes the whole object of the suit, it would be improper for the court to grant same, as the legitimate purpose of the temporary injunction is merely to preserve the existing condition until a final hearing can be had on the merits. The court is without authority to divest a party of property rights without a trial and any attempt to do so is void."

Judge Levy, speaking for the court in Sinclair Refining Co. v. City of Paris (Tex. Civ.App.) 68 S.W.(2d) 230, 235, states: "The legal rights of appellant to pursue business of operating a filling station on the particular lot is not so certain, in point of fact as well as in point of law, as to warrant setting aside the conclusion of the trial judge in respect thereto. The controversy is one best determined upon final trial and judgment, and not through means of an interlocutory order, as a ruling, as it might be, would finally determine the suit. In accordance with the general rule, the matter which may be considered upon the review of an interlocutory order granting or refusing an injunction is restricted to the propriety of the order. 24 Tex.Jur. § 250, p. 307; Coffee v. Borger State Bank (Tex.Civ.App.) 38 S.W.(2d) 187; Neill v. Johnson (Tex.Civ.App.) 234 S.W. 147. An interlocutory injunction is a remedy provisional and intermediate only, and ordinarily it will not be granted where its issuance would have the effect to practically dispose of the whole case and of granting all the relief that could be obtained by a final decree. 32 C.J. § 2, p. 20; 24 T.J. § 99, p. 140."

In Williams v. Sinclair Prairie Oil Co., 87 S.W.(2d) 892, 895, from this court, it is said:

"'The law is well settled in this state that the purpose of the issuance of a temporary injunction is to maintain the status quo in regard to the matter in controversy, and not to determine the respective rights of the parties under the cause of action asserted or defenses urged.' * * * James v. Weinstein & Sons (Tex.Com.App.) 12 S.W. (2d) 959, 960." And cases cited.

"The status quo, as the term is used in injunction suits, means 'the last actual, peaceable, noncontested status of the parties to the controversy, which preceded the pending suit, and which should be preserved until a final decree can be entered.'" Gill v. Hudspeth County Conservation & Reclamation District (Tex.Civ.App.) 88 S.W. (2d) 517, 519; Morgan v. Smart (Tex.Civ. App.) 88 S.W.(2d) 769.

The right to own and control property is a sacred one which should not be disturbed except in extraordinary cases. In Cain v. Trueheart (Tex.Civ.App.) 12 S.W.(2d) 239, 241, it is said: "It is, as contended by appellants, the well-established rule that an injunction restraining the use of property should be issued with the greatest caution, sustained by clear and satisfactory evidence, not only that the applicant will sustain damages, but such damages as he could not recover in a court of law. As said by this

court in the case of Iford v. Nickel, 1 S. W.(2d) 751: 'The sacred right of the use and enjoyment of property cannot be taken or destroyed in a court of equity without pleadings so plain and clear as to be beyond criticism or dispute, followed by unimpeachable testimony.' As said by Chief Justice Phillips in Spann v. City of Dallas, 111 Tex. 350, 235 S.W. 513, 19 A.L.R. 1387: 'The substantial value of property lies in its use. If the right of use be denied, the value of the property is annihilated and ownership is rendered a barren right.' "

■ We think the judgment of the trial court denying the temporary injunction should be sustained for the further reasons: (1) The granting or refusing of a temporary injunction rests in the sound discretion of the trial court, and his judgment should not be reversed except in case of a clear abuse of such discretion; and (2) in a case of this character, trespass to try title, the appellant has an adequate remedy at law.

■ Regarding the discretion of the trial court in relation to granting or refusing a temporary injunction it has been said: "The granting of a writ of injunction is addressed to the sound discretion of the trial court, and his action in refusing to grant such a writ will be revised only where a clear abuse of that discretion is shown." Herman v. Forrest (Tex.Civ. App.) 294 S.W. 624, 625, and cases there cited. To the same effect are Beall v. Barsch (Tex.Civ.App.) 37 S.W.(2d) 761. Based upon the facts in the record before us, it is clear that the trial judge did not abuse his discretion in denying the injunction in this case. And, as stated above, the temporary injunction was properly denied in this case because the appellant had an adequate remedy at law, namely, sequestration, which certainly would have afforded it adequate protection. "Where the law furnishes a clear, adequate, and complete remedy, a court of equity will not grant relief by injunction." Jowell v. Carnine (Tex.Civ.App.) 20 S.W.(2d) 1087, 1089, writ refused, and cases there cited.

■ We are of the opinion that the trial court did not err in denying appellant's request for a receiver. No statutory grounds were alleged or proven which would in any wise justify the trial court in appointing a receiver to take charge of the property involved. Under the facts as developed on the trial, either the appellant owned the whole of the leasehold in controversy or the appellees were the sole owners thereof. It is clear, then, that the appellant is relegated, in its application for receivership, to the rules of equity governing such actions. Appellant alleges in its amended petition that some of the appellees during the month of August, 1935, made application to the Railroad Commission for a permit to drill a well for oil on the land in controversy, and that the commission granted said permit. And it alleged that on October 29, 1935, it notified appellees Lee and Burnett both by letter and telegram that it had already filed suit against them in trespass to try title. An examination of the record fails to reveal any such notice having been given to any of the appellees. Thus we have the spectacle of appellant's standing by and allowing appellees to expend a large sum of money by drilling an oil well and bringing in the same as a producer, without attempting to prevent this alleged unwarranted act by resort to either legal or equitable recourse. We think the case of Simmons v. East Texas Oil Refining Co., 68 S.W.(2d) 302, 304, by this court, states the correct rule wherein it is said: "Stated without prejudice to appellees' rights upon trial of the case, it appears from the record before us that appellant's claim is based upon good faith, and that his right to recover upon final trial is as probable as that of appellees. It further appears that appellees knew when appellant first began drilling the well, and then knew, that it was located at a point which appellees claim is on their lease. Appellees did not avail themselves of the legal remedies to prevent the alleged trespass of appellant, but waited until he had been to the labor and expense of drilling the well ready to be brought in to producing oil, and then sought the remedy of receivership, and at a time and under conditions which the legal remedies would still have afforded adequate protection. In the circumstances, it is not thought that appellees can now, in equity, cause the receivership to be continued by reason of conditions brought about by the drilling in of the well by the receiver whom appellees caused to be appointed."

The case cited last above emphasizes the maxim of equity that he who seeks equity must come into court with clean hands.

Therefore it is our opinion that there is no error in this record, and the judgment of the trial court will be affirmed.